In The

# United States Court Of Appeals
# For The Federal Circuit

### INLINE PLASTICS CORP., a Connecticut corporation,

*Plaintiff – Appellant,*

v.

### EASYPAK, LLC, a Massachusetts corporation,

*Defendant – Appellee.*

Appeal from the United States District Court for the
District of Massachusetts in case no. 11-11470,
Judge Timothy S. Hillman.

_____

### BRIEF OF APPELLEE

_____

**Craig M. Scott**
**Christine K. Bush**
**Anastasia A. Dubrovski**
**SCOTT & BUSH LTD.**
**One Turks Head Place**
**Fourth Floor**
**Providence, Rhode Island 02903**
**(401) 865-6035**

*Counsel for Appellee*

*Gibson* Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4, counsel for Defendant-Appellee EasyPak, LLC certifies the following:

1.     The full name of every party or amicus represented by us is:

        EasyPak, LLC

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

        Not applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by us are:

        Not applicable.

4.     The names of all law firms and the partners or associates that appeared for the party in the trial court now represented by us or are expected to appear in this court are:

        Craig M. Scott, Scott & Bush Ltd.
        Christine K. Bush, Scott & Bush Ltd.
        Anastasia A. Dubrovsky, Scott & Bush Ltd.
        Daniel E. Ostrach, Scott & Bush Ltd.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF RELATED CASES ...................................................vi

STATEMENT OF THE CASE..................................................................1

   A.    Facts Relevant to the Issues Submitted for Review ............................1

       1.    Background ...............................................................................1

       2.    Inline's prosecution of U.S. Patent No. 7,118,003 ...................2

           a.    U.S. Provisional Patent Application No. 60/489,093 ........................................................................2

           b.    The Application for the '003 patent .................................5

               i.    Inline's January 17, 2006 Response......................6

               ii.    Inline's February 24, 2006 Supplemental Response................................................................7

               iii.    The June 6, 2006 Office Action ...........................8

               iv.    Inline's July 21, 2006 Response..........................10

       3.    Inline's prosecution of the '680 Patent and 11/483,900 Application....................................................................10

           a.    The '680 patent ............................................................10

           b.    Patent Application No. 11/483,900 ................................12

B.    The Relevant Procedural History ........................................15

C.    The Rulings Presented for Review.....................................17

SUMMARY OF ARGUMENT ................................................................17

ARGUMENT ........................................................................................18

A.    The District Court correctly determined that the '003 patent is
not infringed .....................................................................18

B.    The District Court properly construed "frangible
section"/"frangible section, which upon severing" as "a
removable tear strip, delimited by at least two severable score
lines."................................................................................19

    1.    The intrinsic record supports the district court's
conclusion that the frangible section has to be a tear strip,
and it has to be removable .......................................20

    2.    The intrinsic record supports the district court's
conclusion that the removable tear strip is delimited by at
least two severable score lines .................................29

        a.    The Menshen patent does not preclude the district
court's construction .......................................32

        b.    The district court properly concluded that the
doctrine of claim differentiation does not apply ...........33

C.    The District Court properly construed "tamper evident bridge"
as "a structure that connects the lid and base portions of the
container and also contains a removable tear strip, delimited by
at least two severable score lines, which once removed provides
evidence that tampering has occurred." .............................36

CONCLUSION......................................................................................40

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ..................................................22

*Autogiro Co. of Am. v. United States*,
  384 F.2d 391 (Ct. Cl. 1967)................................................33, 38

*Bell Atl. Network Svcs., Inc. v. Covad Commc'ns Grp., Inc.*,
  262 F.3d 1258 (Fed. Cir. 2001) .................................................22

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) .................................................21

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
  438 F.3d 1374 (Fed. Cir. 2006) .................................................34

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
  222 F.3d 951 (Fed. Cir. 2000) ..................................................28

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
  177 F.3d 968 (Fed. Cir. 1999) ..................................................34

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991) ............................................33, 34

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
  133 F.3d 1473 (Fed. Cir. 1998) .................................................34

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................................34, 35

*SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*,
  242 F.3d 1337 (Fed. Cir. 2001) ............................................21-22

*Southern Mills, Inc. v. Polartec, LLC*,
  377 Fed. Appx. 2 (Fed. Cir. 2010)..............................................35

*Spectrum Int'l., Inc. v. Sterilite Corp.*,
  164 F.3d 1372 (Fed. Cir. 1998) ...................................................21

*Sportlite, Inc. v. Genlyte Thomas Grp., LLC*,
  No. CV04–2146–PHX–MHM,
  2006 WL 4702096 (D. Az. Sept. 16, 2006)..................................36

*Starhome GmbH v. AT&T Mobility LLC*,
  743 F.3d 849 (Fed. Cir. 2014) ....................................................35

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
  734 F.3d 1332 (Fed. Cir. 2013) ..................................................22

*Toro Co. v. White Consol. Indus., Inc.*,
  199 F.3d 1295 (Fed. Cir. 1999) ..................................................22

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
  392 F.3d 1325 (Fed. Cir. 2004) ..................................................34

*Zircon Corp. v. Stanley Black & Decker, Inc.*,
  452 Fed. Appx. 966 (Fed. Cir. 2011) ..........................................34

## Statutes

35 U.S.C. § 101 ..........................................................................12

35 U.S.C. § 102(b) ...........................................................*passim*

35 U.S.C. § 103 ..........................................................................11

35 U.S.C. § 103(a) .................................................................13, 14

35 U.S.C. § 112 ..........................................................................22

## Regulation

37 C.F.R. § 1.84(p)(4)................................................................22

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5(a), Defendant-Appellee, EasyPak, LLC ("EasyPak"), states that it knows of no other appeal in or from the instant civil action that has been previously before this or any other appellate court. Pursuant to Federal Circuit Rule 47.5(b), EasyPak knows of no other case pending before any other Court that will directly affect or be directly affected by this Court's decision on appeal.

## STATEMENT OF THE CASE

**A.     Facts Relevant to the Issues Submitted for Review.**

**1.     Background**

This case involves tamper resistant/tamper evident plastic containers, a solution to the unfortunate, but long-acknowledged, reality that "containers are tampered with by persons who wish to tamper with the goods or products which are stored in the packages." (A1261.) The technology is decades old, and, well before the invention claimed here, it was obvious that it was highly desirable to produce a package that was: (1) relatively inexpensive; (2) easy to produce; (3) substantially tamper proof; and (4) incorporating characteristics that made tampering evident to the customer. (*Id.*)

More than fifty (50) years ago, U.S. Patent No. 2,915,214 issued to Frankel (the "Frankel patent"). It discloses a plastic container with a lid and a base with "a sealing rim" mechanism. (A866.) The lid and the base disclosed in Frankel have outwardly extending peripheral flanges, connected by a hinge with "rupturable perforations," which, when pulled apart, leave "separated ends" to facilitate opening the container. (See, e.g., A867, col. 1, lines 52-57, col. 2, lines 31-40.)

In 1978, German Patent No. 7816353 issued to Menshen (the "Menshen patent"). The Menshen patent relates to a one-piece tamper-proof container and discloses a lid connected by a hinge to a base. (A1272.) The user removes a tear strip to open the container, which provides evidence of possible tampering.

1

(A1274) ("It is possible to lift up the lid with the help of the gripping strip 11 only by pulling laterally on the perforated strip 12… then it is obvious that the container has already been opened once.").

Approximately twenty years later, U.S. Patent No. 5,507,406 issued to Urciuoli (the "Urciuoli patent"). (A1258.) The Urciuoli patent, "Tamperproof/Tamper Evident Container," discloses a resealable container where the lid cannot be removed without producing visible evidence of the removal. (A1258, 1261.) The Urciuoli invention employs a circumferential engagement mechanism, where the base includes a breakpoint "in the form of a perforated line, a groove or the like" connecting the base to the lid. (A1262, col. 4, lines 43-48.) Only by fracturing the breakpoint can the lid be removed, which provides evidence of possible tampering. (*Id.*, col. 4, lines 48-52; A1263, col. 5, lines 19-24.)

## 2.    Inline's prosecution of U.S. Patent No. 7,118,003

### a.    U.S. Provisional Patent Application No. 60/489,093

On July 21, 2003, Robert Sellari, Peter Boback, and Bruce Stein filed U.S. Provisional Patent Application No. 60/489,093 (the "'093 application"). The '093 application, entitled "Tamper Resistant Package and Method of Forming Same," is the parent application of the '003 patent. (A887.) The '093 application is "directed to a tamper resistant package . . . having a cover portion and a base portion, and including [a] structure for preventing the removal of the cover portion

from the base portion without first removing a frangible hinge portion connecting the cover portion to the base portion[.]"  (A889.)

In its Enabling Description of the Subject Invention, the '093 application teaches a base (part 14) and a cover (part 12) (A891):



FIG. 2

(A899.)

Those parts are joined by hinge (part 16) and a frangible section (part 34), which is "removed" or "detached" to open the container.  (A892, 893) ("Until such time as the frangible section 34 from [sic] is removed from hinge 16 … the cover portion 12 cannot

be readily removed[.]")  The frangible section is delimited by a pair of "parallel score lines" or similar areas of weakness (e.g., a plurality of nicks, a plurality of depressions, perforation lines).  (A893.)  The '093 application describes the following figure as a "top plan view of the tamper resistant package . . . of the subject invention[.]"  (A890.)



(*See* A899[1].)

### b.    The Application for the '003 patent

On July 21, 2004, the '003 Inventors filed the application for the '003 patent (the "'003 application"). The '003 patent claims priority from the '093 application and incorporates the '093 application's entire disclosure. (A-148.)

On September 16, 2005, the Examiner issued a non-final Office Action rejecting all claims of the '003 application. The Examiner rejected claims 1, 6, 7 and 9 under 35 U.S.C. § 102(b) as being anticipated by the Urciuoli patent. The Examiner explained that Urciuoli disclosed a tamper resistant/evident container comprising a cover portion defining an outwardly extending peripheral flange; a base portion defining an upper edge forming a projecting bead configured to render the outwardly extending flange of the cover portion inaccessible when the container closed, and releasable locking structures. (A262.)

The Examiner also rejected claims 1-6, 9-15 and 17-20 under 35 U.S.C. § 102(b) as being anticipated by the Menshen patent. (A262.) The Examiner explained that

> Menshen discloses, in figs. 1-4, a tamper-resistance [sic]/evident container comprising a cover portion 3 defining an outwardly extending peripheral flange 9; a base portion 1 defining an upper edge forming a projecting bead configured to render the outwardly extending flange of the cover portion inaccessible when the container closed; a hinge 11 defining a frangible section joining the outwardly extending flange of the cover portion with the base portion, and releasable locking structures.

(*Id.*)

### i.    Inline's January 17, 2006 Response.

On January 17, 2006, Inline submitted an Amendment and Response. (A222.)  There, Inline amended independent claim 1 to add the limitation of "a tamper evident bridge connecting the cover portion to the base portion."  (A223.) Inline amended dependent claim 2 to add the limitation that "the tamper evident bridge" of claim 1 "includes a hinge joining the outwardly extending flange of the cover portion with the base portion," and, instead of the hinge "defining" the frangible section, "the hinge includ[es] a frangible section. . ."  (*Id.*)  Inline made consistent amendments to the original independent claims 10 and 17.  (A225-226.)

In its Remarks, Inline asserted that it had amended original claims 1, 2, 10 and 17 "to more particularly point out and define the subject matter regarded as inventive."  (A229.)  Addressing the specific bases for the Office Action, Inline represented that amended claim 1 recites, *inter alia*, a tamper resistant/evident container that "includes a tamper evident bridge connecting the cover portion to the base portion."  (A230.)  As evidence to support its amendments, Inline submitted a Declaration of Edward Colombo, where Dr. Colombo stated that "[o]ne of the structural features of the container [disclosed in this patent application] …. is the skirt … formed to have a vertical height that directly correlates with the height of a frangible hinge that includes a tear strip."  (A244, at ¶ 11.)  Dr. Colombo also stated that "[i]f the tear strip is not removed from the

6

container, it is extraordinarily difficult to remove the lid from the container without leaving behind significant evidence of tampering." (A245, at ¶ 13.)

Inline distinguished its invention from the Urciuoli patent by asserting that the Urciuoli patent's frangible breakpoint is "in the form of a perforated line, a groove or the like." (A230.) Inline contrasted that disclosure with its claimed invention of a container with a "tamper evident bridge that connects a cover portion to a base portion." (A230.) Inline argued that "modifying the container of the [Urciuoli] patent to arrive at Applicants' invention as claimed in claim 1 would require that the principle of operation of the [Urciuoli] patent be changed to accommodate an entirely different manner of opening the container." (A230.)

Inline distinguished its invention from the Menshen patent by arguing that Menshen disclosed a container made of aluminum, not plastic. (A230-231.) Inline also argued that dependent claims 2-9 and 23-24 recited additional features not disclosed by the Urciuoli or Menshen patents. Inline noted that claim 4 also adds the frangible section of the hinge delimited at least in part by a pair of parallel score lines, clarifying that the breakpoints on either side are score lines and not another mechanism, e.g., nicks or weakened portions. (A233.)

### ii. Inline's February 24, 2006 Supplemental Response.

On February 24, 2006, Inline filed a Supplemental Response to its January 2006 Response. (A212.) That Supplemental Response again addressed the Urciuoli and Menshen patents and argued that Inline's container's commercial

success flows from the features claimed in the '003 patent, including "a cover that is very difficult to open without removing the tamper evident bridge connecting the cover to the base portion[.]"  (A214.)

At the same time, Inline submitted a Commercial Success Declaration from August Lanzetta, Inline's Vice President of Sales.  (A217, at ¶ 2.)  Mr. Lanzetta described the tamper resistant/evident containers Inline marketed and sold as including "a tamper evident feature, such as a tear strip, connecting the cover portion to the base portion."  (A217, at ¶ 3.)  Mr. Lanzetta represented that pilferage was substantially reduced because the Inline invention provides "a cover that is very difficult to open without removing the tamper evident feature connecting the cover to the base portion[.]"  (A218, at ¶ 5.)

Appended to Mr. Lanzetta's Declaration, Inline submitted "exemplary testimony" from one of its customers, Arcade Industries, Inc.  (A218, at ¶ 4, referencing statement at A220.)  There, Inline's customer declared that

> [Inline's] container is designed in such a way as to virtually prevent access to the contents without removal of the tear strip.  Our customers enjoy the security offered by the containers' tight seal and tamper evident tear strip, and the ease with which the container can be opened after the tear strip has been removed.

(A220.)

### iii.    The June 6, 2006 Office Action.

The Examiner issued a Final Office Action on June 6, 2006.  There, the Examiner allowed claims 1-9 and 21-24, rejected claims 10-20 and objected to

claim 25. (A206.) The Examiner concluded that Mr. Lanzetta's Commercial

Success Declaration was sufficient to overcome the rejection of claims 1-9 and 23-

25 based on the fact that the tamper resistant/evident containers include "a tamper

evident feature, such as a tear strip, connecting the cover portion to the base

portion." (A207.) The Examiner also credited the Declaration of Edward

Colombo as sufficient to overcome the rejection of claims 1-9 and 23-25 in light of

the geometry of the containers and their structural features disclosed in paragraph

11 of Dr. Colombo's Declaration. (A207.)

The Examiner maintained the rejection of claims 10-20 as anticipated by the

Menshen patent pursuant to 35 U.S.C. § 102(b). The Examiner reasoned that

Menshen discloses, *inter alia*, "a hinge 11 defining a frangible section joining the

outwardly extending flange of the cover portion with the base portion, upon

severing a projection that extends from the base portion (see fig. 2), and releasable

locking structures." (A208.) The referenced Figure 2 from the Menshen patent

teaches:



(A1270.)

### iv.    Inline's July 21, 2006 Response.

On July 21, 2006, Inline filed an Amendment and Response to the June 19, 2006 Office Action.  (A192.)  There, Inline amended claim 17 to gain allowance over the Menshen patent.  (A197.)  In its Remarks, Inline advised that claim 17 was "amended to recite that the hinge of the claimed container includes 'a frangible section, which upon severing, provides <u>an arm</u>'" (instead of "a projection") for facilitating removal of the cover portion from the base portion.  (A202.)  That "arm," Inline argued, distinguished the invention from the Menshen patent because "Menshen merely discloses a land along the top wall of the container that is exposed after the container is opened and the lid is removed."  (A202.)

A Notice of Allowance issued on August 4, 2006, and the '003 patent issued on October 10, 2006.

### 3.    Inline's prosecution of the '680 Patent and 11/483,900 Application.

### a.    The '680 patent

On February 24, 2005, Inline filed the application for the '680 patent (the "'680 application").  The '680 application was a continuation-in-part of the '003 patent; the application was assigned to the same examiner.  (A596.)

On September 16, 2005, the Examiner issued a Non-final Office Action, rejecting claims 1, 6 and 7 pursuant to 35 U.S.C. § 102(b) as being anticipated by

the Urciuoli patent.  (A520.)  The Examiner also rejected claims 1-7, 10-15 and 18-20 pursuant to 35 U.S.C. § 102(b) as being anticipated by the Menshen patent, and claims 8, 9, 16 and 17 as unpatentable pursuant to 35 U.S.C. § 103 over the Urciuoli patent or the Menshen patent in view of U.S. Patent No. 5,287,959 to Hansen.  (A520-A521.)

On January 17, 2006, Inline filed an Amendment and Response to the September 16, 2005 Office Action.  (A470.)  There, Inline argued "original claims 1, 2, 4, 5, 6, 8-10, 12-14, 17 and 18-20 have been amended to more particularly point out and define the subject matter regarded as inventive."  (A481.)

To support its Amendment and Response, Inline submitted the Declaration of Bruce Stein, one of the inventors named on the '003 patent and the '680 application.  (A497.)  After detailing his background, Mr. Stein declared that he was involved in the research and development of containers described in the patent application.  (A497, at ¶ 5.)  Based on that involvement, Mr. Stein testified that "the containers described in the above-identified patent application include a tear strip . . ."  (A498, at ¶ 7.)  According to Mr. Stein, that tear strip drove Inline's choice of plastic materials to ensure the materials allow the tear strip to separate properly from the container when used.  (*Id*.)

Inline also submitted a Declaration from Dr. Colombo.  Consistent with the declaration submitted in connection with the prosecution of the '003 patent, Dr. Colombo again declared that the containers disclosed in the '680 application

include a "tear strip" that satisfied a long felt need, and that "[i]f the tear strip is not removed from the container, it is extraordinarily difficult to remove the lid from the container without leaving behind significant evidence of tampering." (A504-505, at ¶¶ 11, 13.)

On April 4, 2006, the Examiner issued a Final Office Action that rejected all pending claims. (A462.) The Examiner rejected 18-20 under 35 U.S.C. § 102(b) as anticipated by the Menshen patent, and the Examiner determined that the Declarations of Bruce Stein and Dr. Colombo were insufficient to overcome the rejection of claims 1-27 under 35 U.S.C. § 102(b). (A466-467.)

Following a telephone interview between Inline's counsel and the Examiner, the '680 patent issued on May 5, 2006. (A437.)

### b.     Patent Application No. 11/483,900

On July 10, 2006, Inline filed U.S. Patent Application No. 11/483,900 (the "'900 application"), a continuation-in-part of the '680 patent, entitled, "Tamper-Resistant Container With Tamper-Evident Feature And Method Of Forming The Same." (A1300-1352.)

On June 9, 2008, the Examiner issued a Non-final Office Action that rejected all pending claims in the '900 application. (A1370.) The Examiner rejected claims 1-18 under 35 U.S.C. § 101 as claiming the same invention as claims 1-27 of the '680 patent. (A1371.) The Examiner also rejected claims 21, 22 and 50 under 35 U.S.C. § 101 as claiming the same invention as claims 1 and 2

of the '003 patent.  (*Id.*)  The Examiner also rejected claims 1-50 under the

doctrine of nonstatutory obvious-type double patenting over claims 1-27 of the

'680 patent and claims 1-26 of the '003 patent.  (A1371-1372.)

Further, the Examiner rejected claims 1-19, 20-24, 29-34, 39 and 49 under

35 U.S.C. § 103(a) as being unpatentable over the Frankel patent in view of the

Urciuoli patent.  (A1372-1373.)

On April 17, 2009, Inline responded to the Office Action.  Referring to the

Frankel patent, Inline characterized it as a "failed attempt" to satisfy a long-felt

need because, Inline asserted, the Frankel patent teaches a clamshell container that

includes a hinge with rupturable perforations (A1393-1394):



(A866.)  As Inline explained it, the "two halves of the container are joined by a

hinge," i.e., a de facto single score line, and the container can be opened by

"tearing away the hinge," which leaves separated ends that can be grasped to separate the two parts of the container. (A1394.)

Inline amended claim 1 of the '900 application to include the limitation that "the cover portion is attached to the base portion by a hinge including a perforation that may be ruptured by pulling on at least one grasping tab to permit the container to be opened." (A1378.) Inline argued that "the claims, as presently drafted, patentably distinguish over the claims in U.S. Patent 7,073,680 and U.S. Patent No. 7,118,003." (A1393.)

On July 21, 2009 the Examiner issued a Final Office Action. (A1402.) The Examiner maintained the earlier rejection of claim 1 and claims 3-72 based on nonstatutory obvious type double patenting as being unpatenable over claims 1-27 of the '680 patent and claims 1-26 of the '003 patent, reasoning that "they embody the same scope of invention." (A1404.)

The Examiner also rejected claims 1, 3-19, 20-24, 29-34, 39, 40-42 and 50-53 under 35 U.S.C. § 103(a) as unpatentable over the Frankel patent in view of the Urciuoli patent and U.S. Patent No. 5,219,087 issued to Christiansson. (A1405.) The Examiner found the balance of Inline's arguments unpersuasive. (A1408.) The Examiner reasoned, among other things, "Frankel discloses a container formed of two similar sections, hinged together at a bridge wherein said hinge is perforated in order to separate from said bridge portion. This *inter alia* is taught in the instant

14

case." (A1408-1409.)  On March 22, 2011, a Notice of Abandonment issued. (A1412-1413.)

## B.    The Relevant Procedural History

On August 17, 2011, Inline filed its Complaint against EasyPak, alleging that EasyPak manufactures, imports, sells and/or offers for sale tamper resistant/evident containers that infringe the '003 and the '680 patents.  (A663.) On November 2, 2011, EasyPak filed its Answer, denying all allegations, and asserted Counterclaims seeking a Declaratory Judgment of Invalidity of all asserted claims of the '003 and the '680 patents.   (Dkt. No. 11.)

On February 24, 2012, Inline filed its Disclosure of Claims Asserted and Infringement Contentions.  (A708.)  Inline's Infringement Contentions asserted claims 1-3, 7, 9, 17, 18, 21, and 25 of the '003 patent against EasyPak.  (A712.) The Contentions include images Inline supplied and annotated to identify the parts of the accused EasyPak products that it alleges meet the limitations of the '003 patent.

The parties' Joint Claim Construction and Prebriefing Statement proposed the following constructions relevant to this appeal:

| TERM | INLINE'S CONSTRUCTION | EASYPAK'S CONSTRUCTION |
|------|----------------------|------------------------|
| "tamper evident bridge" | Material that joins/connects a cover portion and a base portion of a container, which when severed, provides evidence that tampering has occurred. | A removable structure that connects the cover to the base portion. |
| "frangible section" | A section of material that includes at least one score line or at least one perforation line. | (see below) |
| "frangible section, which upon severing" | (see above) | A removable tear strip. |

(A762.)

The district court held a Claim Construction hearing on October 11, 2012. (A55.) The Claim Construction Memorandum and Order issued on January 23, 2013. (A8.)

Thereafter, EasyPak pursued invalidity discovery, including inventor and non-party depositions. Only after months of discovery did Inline seek a judgment of non-infringement with respect to the '003 patent and dismissal of EasyPak's Counterclaims concerning both patents in suit. (Dkt. No. 64.) The district court entered judgment of non-infringement on the asserted claims of the '003 patent, dismissed Inline's claims concerning the '680 patent with prejudice, and dismissed

without prejudice EasyPak's Counterclaims for invalidity for both patents in suit. (A-1.)

## C.     The Rulings Presented for Review

Inline appeals from the district court's final judgment finding that EasyPak's accused products do not infringe claims 1-3, 7, 9, 17, 18, 21 and 25 of the '003 patent.  (Appellant's Br., p. 8.)  By this appeal, Inline presents for review the district court's Memorandum and Order construing the claims (1) "frangible section"/"frangible section which upon severing; and (2) "tamper evident bridge":

| TERM | DISTRICT COURT'S CONSTRUCTION |
|------|-------------------------------|
| "frangible section" | A removable tear strip, delimited by at least two severable score lines. |
| "frangible section, which upon severing" | (see above) |
| "tamper evident bridge" | A structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least two severable score lines, which once removed provides evidence that tampering has occurred. |

## SUMMARY OF ARGUMENT

Inline's argument is based on a flawed reading of a few lines from the specification.  Were Inline's argument to be credited, the result would be to broaden the scope of the claimed invention to encompass a plastic container with a top, a bottom and a hinge with one score/perforation line the user could just

puncture open (A-14, at n.5), i.e. the Frankel patent that issued almost a half

century before the '003 patent:



The district court properly rejected Inline's broadening efforts, and its

constructions were entirely consistent with applicable caselaw and the claims,

specifications and prosecution histories.  The district court's judgment should be

affirmed, and this appeal should be dismissed.

## ARGUMENT

### A.    The District Court correctly determined that the '003 patent is not infringed.

None of EasyPak's accused products has a structure that connects the lid and

base portions of its containers and also contains a removable tear strip, delimited

by at least two severable score lines, which once removed provides evidence that

tampering has occurred.  Accordingly, Inline properly concedes that the district

court's construction of frangible section"/"frangible section, which upon severing"

and "tamper evident bridge" eliminated its infringement theory.  (A1166.)  In view

of Inline's concessions, the district court properly granted judgment of non-

infringement of the '003 patent.

**B.**     **The District Court properly construed "frangible section"/"frangible section, which upon severing" as "a removable tear strip, delimited by at least two severable score lines."**

The parties agree that the disputed terms appearing in claims 1 and 2 are

representative (*see* Appellant's Br., pp. 14-15):

| **Claim Language** |
| --- |
| 1.     A tamper-resistant/evident container comprising: |
| a) a plastic, transparent cover portion including an outwardly extending peripheral flange; |
| b) a base portion including an upper peripheral edge forming at least in part an upwardly projecting bead extending substantially about the perimeter of the base portion and configured to render the outwardly extending flange of the cover portion relatively inaccessible when the container is closed; and |
| c) **a tamper evident bridge** connecting the cover portion to the base portion. |
|  |
| 2.     A tamper-resistant/evident container as recited in claim 1, wherein **the tamper evident bridge includes a hinge** joining the outwardly extending flange of the cover portion with the base portion, **the hinge including a frangible section, which upon severing**, provides a projection that extends out beyond the upwardly projecting bead of the upper peripheral edge of the base portion, for facilitating removal of the cover portion from the base portion to open the container. |

In its Memorandum and Order, the district court clarified that it would

construe the terms "frangible section" and "frangible section which upon severing"

together because both refer to identical structures and form the heart of this claim construction dispute. (A-13.) Inline does not challenge that methodology.

Instead, Inline argues that the district court's construction should be reversed because, it alleges, the district court (1) erred in focusing on specific embodiments, (2) ignored claim differentiation, and (3) improperly credited EasyPak's argument that the hinge and the frangible sections are different parts. (Appellant's Br. at pp. 22, 26, and 30.) Inline is wrong on all three counts.

At the Markman stage, the district court was presented with two conflicting constructions of the phrase "frangible section"/"frangible section, which upon severing" in the '003 patent. Inline proposed "a section of material that includes at least one score line or at least one perforation line." (A762.) EasyPak proposed "a removable tear strip." (*Id*.) The district court instead construed the terms as "a removable tear strip, delimited by at least two severable score lines." (A-20.) The district court is correct.

> **1.    The intrinsic record supports the district court's conclusion that the frangible section has to be a tear strip, and it has to be removable.**

The specification teaches that the "frangible section" is part 18. (A159.) Throughout the specification, part 18 is identified interchangeably as a "pull strip," a "frangible strip," a "strip," and a "frangible pull strip." (*See, e.g.,* A159, col. 5, lines 37-40 ("frangible section or pull strip 18, which, upon its removal, severs the integral connection between cover portion 12 and base portion 14"); col. 5, lines 65-

68 ("Container 10 incorporates features which are intended to prevent and deter opening container 10 without first removing frangible strip 18 from hinge 16"); col. 6, lines 46-59 ("As can be best viewed in FIGS. 11 and 12, detaching frangible strip 18 from hinge 16 of container 10 leaves behind upper and lower arms 36 and 38 on cover portion 12 and base portion 14, respectively"); col. 6, lines 57-64 ("If access to container 10 is desired, strip 18 must be removed so that upper and lower arms 36 and 38 are free to be used to leverage cover portion 12 from base portion 14. . . . Strip 18, however, once removed, is not replaceable. Thus, removal of strip 18 function as a clear indicator of possible tampering. . .")).

Generally, as Inline correctly notes, "if an apparatus claim recites a general structure without limiting that structure to a specific subset of structures, [this Court] will generally construe the term to cover all known types of that structure that the patent disclosure supports." (Appellant Br., p. 20) (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).) In *CCS*, however, the Court held that a claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention. 288 F.3d at 1366-67 (citing *Spectrum Int'l., Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) (narrowing a claim term's ordinary meaning based on statements in intrinsic evidence that distinguished claimed invention from prior art); *SciMed Life Sys., Inc.*

*v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001) (limiting claim term based in part on statements in the specification indicating that "all embodiments" of the claimed invention used a particular structure); *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) (limiting claim term based in part on statements in the specification describing a particular structure as "important to the invention")).

Here, Inline never disclosed the "frangible section" in the patent in any context other than as a pull strip/tear strip. 35 U.S.C. § 112. The purpose of the written description requirement is to require an inventor to disclose his invention to the public in such a manner as to allow "a person of skill in the art to recognize that the patentee invented what is claimed." *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013) (citing *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)). As the claims and specification are drafted, the frangible section cannot be anything less than or different from a pull strip/tear strip. *See Bell Atl. Network Svcs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication'"); 37 C.F.R. § 1.84(p)(4) ("the same reference character must never be used to designate different parts").

Specifically, of the independent claims of the '003 patent asserted against

EasyPak,[2] each reference to the "frangible section" also includes "which upon

severing." (A160-161.) In the patent, Inline used "sever" synonymously with the

words "remove" or "detach." (*See, e.g.*, A159, col. 5, lines 37-40 ("Hinge 16

includes a tamper-evident frangible section or pull strip 18, which, upon its removal,

severs the integral connection between cover portion 12 and base portion 14.") The

figures in the patents illustrate the interchangeability of Inline's use of "sever,"

"remove," and "detach":



FIG. 1

FIG. 8

"FIG. 8 is an exploded perspective view of the container shown in FIG. 1, illustrating in particular the operative association between the cover portion, base portion and frangible section"

'003 Patent, Col. 4, lines 9-12.

(A149, A151.)

The removal of the tamper evident tear strip acts as a signal that someone

has opened, or has tried to open, the container. As explained in the Detailed

Description of the Preferred Embodiments, the container is filled with food or

other contents that need consumer protection. (A159, col. 5, lines 42-43.) The

container "incorporates features which are intended to prevent and deter opening"

[2] *See* A709.

that cover without "first removing frangible strip 18." (A159, col. 5, lines 65-67.) The specification teaches colored or embossed indicia to facilitate the "removal" of the strip (part 18) so that the consumer understands the significance of its removal in the context of product tampering. (A159, col. 6, lines 37-45.) If the consumer wants to access the inside of the container, the "strip 18 must be removed" and once that happens, the strip is not replaceable. (A159, col. 6, lines 57-62.)

"Thus," the specification teaches, "removal of strip 18 functions as a clear indicator of possible tampering, in that if strip 18 is partially or fully removed prior to purchase, it is readily apparent to a consumer that someone may already have gained access to the contents" of the container. (A159, col. 6, lines 63-67.)

Additionally, the patent includes figures to allow one of ordinary skill in the art to understand how to make and use the package disclosed in the patent. (A158, col. 3, lines 36-40.) The Brief Description of the Figures describes Figure 11 as an illustration of "the manner in which the frangible section can be removed":



**FIG. 11**

(A152.)

Construing the "frangible section" term as "a removable tear strip" is fully supported by the disclosure in the Provisional Application No. 60/489,093 from which the '003 patent claims priority. In its Enabling Description of the Subject Invention, the '093 application teaches a base (part 14) and a cover (part 12) joined by hinge (part 16) and a frangible section (part 34), which is "removed" or "detached" to open the container. (A892, 893) ("Until such time as the frangible section 34 from [sic] is removed from hinge 16 … the cover portion 12 cannot be readily removed[.]") The '093 application describes the following figure as a "top plan view of the tamper resistant package . . . of the subject invention[.]" (A890.)



(*See* A899[3].)  Every description of the invention and figure in the '093 application includes a pull strip.  (*See generally* A891-894, A898-901.)  The "frangible pull strip, which must be removed" is disclosed as the principal inventive step described in the '093 application.

Moreover, the patentees' representations during the prosecution of the application that matured into the '003 patent support the district court's construction.  On September 16, 2005, the Examiner issued a non-final Office Action rejecting all claims of the '003 application, citing to the Urciuoli and Menshen patents.  (A262.)  On January 17, 2006, Inline submitted its Amendment and Response.  (A222.)  Inline specifically distinguished its invention from the Urciuoli patent by asserting that the Urciuoli patent's frangible breakpoint is "in the form of a perforated line, a groove or the like."  (A230.)  Inline contrasted that disclosure with its claimed invention of a container with a "tamper evident bridge that connects a cover portion to a base portion."  (A230.)  Inline argued that "modifying the container of the [Urciuoli] patent to arrive at Applicants' invention as claimed in claim 1 would require that the principle of operation of the [Urciuoli] patent be changed to accommodate an entirely different manner of opening the container."  (A230.)

---

[3] Figure 2 has been modified to magnify the "tamper evident pull strip, which must be removed[.]"

As evidence to support its amendments, Inline submitted the Declaration from Dr. Colombo, which stated that "[o]ne of the structural features of the container [disclosed in this patent application] …. is the skirt … formed to have a vertical height that directly correlates with the height of a frangible hinge that includes a tear strip."  (A244, at ¶ 11.)  Dr. Colombo also stated that "[i]f the tear strip is not removed from the container, it is extraordinarily difficult to remove the lid from the container without leaving behind significant evidence of tampering." (A245, at ¶ 13.)

On February 24, 2006, Inline filed its Supplemental Response, which addressed the Urciuoli and Menshen patents and argued that Inline's container's commercial success flows from the features claimed in the '003 patent.  (A212, A214.)  In that context, Inline submitted the Commercial Success Declaration from August Lanzetta, which represented that pilferage was substantially reduced because the Inline invention provides "a cover that is very difficult to open without removing the tamper evident feature connecting the cover to the base portion[.]" (A218, at ¶ 5.)

Appended to Mr. Lanzetta's Declaration is "exemplary testimony" from one of its customers, Arcade Industries, Inc.  (A218, at ¶ 4, referencing statement at A220.)  There, Inline's customer declared that

> [Inline's] container is designed in such a way as to virtually prevent access to the contents without removal of the tear strip.  Our customers enjoy the security offered by the containers' tight seal and

tamper evident tear strip, and the ease with which the container can be opened after the tear strip has been removed.

(A220.)

The Examiner credited Mr. Lanzetta's Commercial Success Declaration, concluding that it was sufficient to overcome the rejection of claims 1-9 and 23-25 focusing on the fact that the tamper-resistant/evident containers include "a tamper evident feature, such as a tear strip, connecting the cover portion to the base portion." (A207.)

The construction of the "frangible section" term as "a removable tear strip" also is consistent with the declaration submitted by one of the named co-inventors, Bruce Stein, during the prosecution of the '680 patent to overcome a non-final rejection. (A470.) Based on his involvement in the research and development of containers described in the patent application bearing his name (A497, at ¶ 5), Mr. Stein testified that "the containers described in the above-identified patent application include a tear strip . . ." (A498, at ¶ 7.) According to Mr. Stein, that tear strip drove Inline's choice of plastic materials to ensure that the materials allow the tear strip to separate properly from the container when used. (*Id.*) *See Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("the inventor's statements . . . are part of the prosecution history and form the totality of the public record upon which competitors rely.").

In sum, the district court properly relied on the intrinsic evidence, including the invention disclosed in the specification and the prosecution history, to construe the "frangible section" term as "a removable tear strip."

> **2.** **The intrinsic record supports the district court's conclusion that the removable tear strip is delimited by at least two severable score lines.**

For the purposes of Markman, Inline proposed that the "frangible section" term be construed as "a section of material that includes at least one score line or at least one perforation line." (A762.) It argues that the district court erred when it concluded that the removable tear strip is delimited by at least two severable score lines. Inline is incorrect.

Under Inline's rubric, the frangible section does not have to be a pull strip; to the contrary, according to Inline, the frangible section needs only to include one score line or one perforation line. (A762.) That is not the case.

First, the stated objective of the patent is to develop recloseable containers with tamper-resistant/evident features that "deter tampering and clearly indicate whether tampering has occurred[.]" (A157, col. 2, lines 4-9.) The method taught to accomplish that objective using a frangible section requires the removal of a tear strip. For the invention to be reliable and not unduly burdensome on the consumer (*see* A157, col. 2, lines 9-10), the consumer has to be able to grip, pull and remove the tear strip so it detaches from the container.

Nowhere in the patent does it claim or disclose the frangible section as simply "one score line" or "one perforation line," as Inline suggests. (Appellant's Br., p. 17.) To the contrary, during prosecution Inline specifically distinguished its invention from the Urciuoli patent by asserting that the Urciuoli patent's frangible breakpoint is "in the form of a perforated line, a groove or the like." (A230.)

Now, however, Inline is back to the perforated line; its sole basis to support its proposed construction rests on the following:

> Alternatively, the integral hinge 16 could be formed with a single score line or perforation line, rather than a pair of score lines. In this instance, the single score line could be severed to create a pair of projections which would be used to open the container.

> In this embodiment, strip 18 includes laterally opposed grasping tabs 44*a* and 44*b* to provide a convenient location for gripping strip 18. Preferably, instructional indicia is imprinted on strip 18 to facilitate its removal from hinge 16…

(A159, col. 6, lines 32-42.) Although that passage may provide support for an argument that a <u>hinge</u> could be formed with a single score line or perforation line[4], it is not adequate to support Inline's claim that the claimed <u>frangible section</u> could be formed with a single score line or perforation line.

As was made clear at the Markman hearing, the patent teaches that the frangible section can be located on the hinge, but it still is a part separate from the hinge. (Appellant Br., pp. 32-33.) That two parts are located proximate each other

---

[4] Even this argument is inconsistent with Inline's statements made during the prosecution of the later-filed Patent Application No. 11/483,900.

does not collapse one into the other, as is evident from the fact that the specification identifies the hinge as a part separate from the frangible section.

That also is made clear by Inline's statements during the prosecution of the '003 patent. On January 17, 2006, Inline amended dependent claim 2 to add the limitation that "the tamper evident bridge" of claim 1 "includes a hinge joining the outwardly extending flange of the cover portion with the base portion," and, instead of the hinge "defining" the frangible section, "the hinge includ[es] a frangible section. . ." (A223.) Inline's successful distinction between "includes" versus "defining" to overcome a rejection shows that the frangible section may be located on the hinge (i.e. "included") but the frangible section is not defined by the hinge.

Turning next to the issue of the number of score lines vis à vis the frangible section: having two score lines to facilitate the removal of the frangible section is taught throughout the patent. Sometimes those score lines are parallel, and other times they are paired with notches, depressions, or nicks, but the two score lines are consistent throughout. (e.g., A157, col. 2, lines 36-39; col. 6, lines 23-31.) With a pull strip and only one score line, the user would pull the strip, and find one side detaching and the other side not.

In sum, the district court properly relied on the intrinsic evidence, including the specification and the prosecution history, to construe the "frangible section" term as a "a removable tear strip delimited by at least two severable score lines."

31

### a.   The Menshen patent does not preclude the district court's construction.

For the purposes of this appeal, Inline argues that the district court improperly read in a limitation because, it asserts, the "two severable score lines" construction is "clearly disclosed" in the Menshen patent.  (Appellant's Br., pp. 6-7.)  That argument ignores the statements Inline made during prosecution to overcome a rejection based on the Menshen patent.

In January 2006, Inline distinguished its invention from the Menshen patent, largely focusing on its argument that Menshen disclosed a container made of aluminum, not plastic.  (A230-232.)  Yet, Inline also specifically argued that claim 2 of the '003 patent was allowable over Menshen because it "adds the element of a hinge having a frangible section, which upon severing, provides a projection … for facilitating removal of the cover portion," and it argued that claim 4 of the '003 patent was allowable over Menshen because it "adds that the frangible section of the hinge is delimited at least in part by a pair of parallel score lines."  (A233-234.)

During the prosecution of the '003 patent, Inline never conceded or agreed that Menshen teaches or discloses a frangible section.  To the contrary, on July 21, 2006, Inline amended claim 17 to gain allowance over Menshen.  (A192-197.)  In its Remarks, Inline advised that claim 17 was "amended to recite that the hinge of the claimed container includes 'a frangible section, which upon severing, provides an arm'" (instead of "a projection") for facilitating removal of the cover portion

from the base portion. (A202.) That "arm," Inline argued, distinguished the invention from the Menshen patent because "Menshen merely discloses a land along the top wall of the container that is exposed after the container is opened and the lid is removed." (A202.)

Although it seeks to avoid their import now, Inline's arguments during the prosecution of the '003 patent illustrate that the district court did not wrongly ignore the teachings of the Menshen patent when it construed "frangible section" to include two severable score lines.

### b. The district court properly concluded that the doctrine of claim differentiation does not apply.

Inline also argues that the district court's construction of "frangible section, which upon severing" as "a removable tear strip, delimited by at least two severable score lines" is precluded by claim 4 under the doctrine of claim differentiation. (Appellant's Br., p. 26.) Addressing that argument during the claim construction process, the district court concluded that the doctrine of claim differentiation did not preclude its construction. (A-15.) The district court is correct.

The doctrine of claim differentiation is a judicially developed guide, not a rigid rule. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) (citing *Autogiro Co. of Am. v. United States,* 384 F.2d 391, 404 (Ct. Cl. 1967)). In general, it stands for the concept that because "each claim in a patent has a

different scope," *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) (quoting *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004), "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005); *see also Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999).

Yet, its use in claim construction is subordinate to "the clear import of the intrinsic evidence." *Zircon Corp. v. Stanley Black & Decker, Inc.*, 452 Fed. Appx. 966, 974 n.7 (Fed. Cir. 2011) (citing *Laitram*, 939 F.2d at 1538). "[T]he doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence.... [C]laims that are written in different words may ultimately cover substantially the same subject matter." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998).

Claim 4 requires:

A tamper-resistant/evident container as recited in claim 2, wherein the frangible section of the hinge is delimited at least in part by a pair of parallel score lines.

The specification identifies the "pair of parallel score lines" as parts 42a and 42b, shown on Figure 1 (A159, col. 6, lines 23-25):



FIG. 1

(A149.)

The court's construction requires "a removable tear strip, delimited by at least two severable score lines." (A-20). Nothing in that construction requires that two score lines be parallel. As a result, claim 4 adds a feature not otherwise required (i.e. "a pair of <u>parallel</u> score lines"), so the doctrine of claim differentiation does not apply. *See Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 857 (Fed. Cir. 2014) (claim differentiation does not control the outcome where the claims differ in scope, so the construction does not render any redundant); *Phillips*, 415 F.3d at 1314-15 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."); *Southern Mills, Inc. v. Polartec, LLC*, 377 Fed. Appx. 2, 6 (Fed. Cir. 2010) (possible to distinguish a dependent claim from an independent claim by reference to the additional

35

limitation in the dependent claim that the face yarns "follow substantially identical parallel paths along said knitted face layer" as the tie yarns); *Sportlite, Inc. v. Genlyte Thomas Grp., LLC*, No. CV04–2146–PHX–MHM, 2006 WL 4702096, at *10 (D. Az. Sept. 16, 2006) (discussing angular relationships in the context of a limitation of "substantially parallel").

**C.     The District Court properly construed "tamper evident bridge" as "a structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least two severable score lines, which once removed provides evidence that tampering has occurred."**

Even though Inline now chides the district court for failing to apply the plain and ordinary meaning of this term,[5] Inline's argument ignores the fact that at the Markman stage, the parties agreed that the tamper evident bridge connects the cover and base portions of a container. (A762.) The parties also generally agreed that the tamper evident bridge is removable, with EasyPak characterizing it as "removable" and Inline characterizing it as material that is severed. (A762.) The only difference going into the claim construction hearing was Inline's proposal that the construction "provide[] evidence that tampering occurred." (A762.) Breaking the district court's construction into its elements, the district court essentially adopted Inline's proposal, even though Inline now wants to walk away from its earlier efforts.

---

[5] Appellant's Br., p. 34.

First, the district court's construction includes "a structure that connects the lid and base portions of the container."  Inline does not contest that portion of the construction, nor could it, since Inline acknowledges that it added the "tamper evident bridge" limitation during prosecution to overcome prior art rejections. (Appellant's Br., p. 35.)

Second, the district court's construction clarifies that the tamper evident bridge contains, *inter alia*, "a removable tear strip… which once removed provides evidence that tampering has occurred."  Circling back to Inline's Markman proposal, Inline concurred with that clarification, asserting that the tamper evident bridge is a structure/material that (1) can be severed and (2) provides evidence that tampering has occurred once it is severed.  (A762.)

The "tamper evident bridge" part is not separately referenced anywhere in the specification of the '003 patent; unlike the situation involving the hinge and the frangible section parts, it does not have its own reference character.  The only material/structure identified and taught in that specification that (1) can be severed and (2) provides evidence that tampering has occurred once it is severed is the frangible section, part 18.  *See supra*.

In fact, Inline effectively argued that the tamper evident bridge has the same form and function as the frangible section in traversing the Examiner's rejection of claim 1 of the '003 patent.  On January 17, 2006, Inline added the limitation of "a tamper evident bridge connecting the cover portion to the base portion."  (A223.)

37

It also added claim 24, where the container of claim 1 "is capable of being resealed in a substantially leak resistant manner after a portion of the tamper evident bridge is removed to open the container." (A228.) Inline explained that its invention provides "a cover that is very difficult to open *without removing the tamper evident bridge* connecting the cover to the base portion . . ." (A212, A214) (emphasis added). In that same filing, Inline relied on the Declaration of its Vice President of Sales, who testified that "providing a cover that is very difficult to open *without removing the tamper evident feature* connecting the cover to the base portion" contributes to the commercial success of Inline's products. (A218 (emphasis added).) Inline's statements defined the term "tamper-evident bridge" as a removable structure, which once removed provides evidence that tampering has occurred. *See, e.g.*, *Autogiro*, 384 F.2d at 399 ("When the patent is issued, the patentee cannot disclaim these alterations and seek an interpretation that would ignore them. He cannot construe the claims narrowly before the Patent Office and later broadly before the courts.").

The heart of Inline's objection to the district court's construction is its contention that the district court wrongly limited the scope of the term. That is not accurate. Confronted with the specification that does not even call out "tamper evident bridge" as a separate part, the district properly looked to the prosecution history as intrinsic evidence and, combined with the construction Inline proposed,

properly construed the term within the confines of the invention Inline disclosed in its public filings.

Nor does the district court's construction render claim 2 superfluous in view of claim 1 with the construction applied.  (*See* Appellant's Br., p. 34.)  Applying the district court's construction, the claims read:

| Claim Language |
| --- |
| 1.    A tamper-resistant/evident container comprising: |
| a) a plastic, transparent cover portion including an outwardly extending peripheral flange; |
| b) a base portion including an upper peripheral edge forming at least in part an upwardly projecting bead extending substantially about the perimeter of the base portion and configured to render the outwardly extending flange of the cover portion relatively inaccessible when the container is closed; and |
| c) [**a structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least two severable score lines, which once removed provides evidence that tampering has occurred**] connecting the cover portion to the base portion. |
| |
| 2.    A tamper-resistant/evident container as recited in claim 1, wherein the [**structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least two severable score lines, which once removed provides evidence that tampering has occurred**] includes a hinge joining the outwardly extending flange of the cover portion with the base portion, the hinge including [**a removable tear strip, delimited by at least two severable score lines**] which upon severing, provides a projection that extends out beyond the upwardly projecting bead of the upper peripheral edge of the base portion, for facilitating removal of the cover portion from the base portion to open the container. |

Although Inline argues that the district court's construction leads to incoherency and renders claim 2 superfluous, Inline is not correct.  (*See* Appellant's Br., p. 34.) To the contrary, applying the district court's construction, the claims remain coherent, and claim 2 still includes a hinge limitation not expressly present in claim 1.  In sum, the district court's construction of "tamper evident bridge" is consistent with wording of the claims and the intrinsic evidence.

## CONCLUSION

Inline's argument ignores the relevant prosecution history and flows from a skewed reading of a few lines from the specification insufficient to support the constructions it seeks.  Appellant's arguments, plainly driven by an infringement theory, seek to broaden the scope of the claimed invention so it would encompass a plastic container with a top, a bottom and a hinge with one score/perforation line the user could just puncture open (A-14, at fn. 5).  That structure is nothing more than the antiquated prior art Inline distinguished its invention over during prosecution, and Inline should not be permitted to recapture that broad "one score line" scope now.

For the forgoing reasons, the district court's claim constructions and judgment of noninfringement should be affirmed.

June 17, 2014

/s/ Craig M. Scott
Craig M. Scott
Christine K. Bush
Anastasia A. Dubrovsky
SCOTT & BUSH LTD.
One Turks Head Place, Fourth Floor
Providence, RI  02903
Telephone:  (401) 865-6035
Facsimile:  (401) 865-6039

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 17th day of June, 2014, I electronically filed

this Brief of Appellant with Joint Appendix with the Clerk of Court using the

CM/ECF System, which will send notice of such filing to the following registered

users:

Adam P. Samansky
Peter J. Cuomo
Edwards Wildman Palmer LLP
111 Huntington Avenue
Boston, MA  02199

Barry Kramer
Edwards Wildman Palmer LLP
One Canterbury Green, 201 Broad Street
Stamford, CT  06901

*Counsel for Appellant*

I further certify that, upon acceptance and request from the Court, the

required paper copies of the foregoing will be deposited with United Parcel Service

for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL

CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Adrienne R. Acra-Passehl
Adrienne R. Acra-Passehl
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219

## <u>CERTIFICATE OF COMPLIANCE</u>
### With Type-Volume Limitation, Typeface Requirements,
### And Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    32(a)(7)(B) because:

    this brief contains <u>8,525</u> words, excluding the parts of the brief
    exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using
    <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

June 17, 2014                     <u>/s/ Craig M. Scott</u>
                                  Craig M. Scott
                                  Christine K. Bush
                                  Anastasia A. Dubrovsky
                                  SCOTT & BUSH LTD.
                                  One Turks Head Place, Fourth Floor
                                  Providence, RI  02903
                                  Telephone:  (401) 865-6035
                                  Facsimile:  (401) 865-6039